*Alex. Simpson, Jr*, with him *Francis Shunk Brown*, for appellee.

PER CURIAM, May 19, 1902:

By the terms of the policy the trust company was entitled to subrogation to all the rights and remedies of the insured.   As the plaintiffs, by voluntarily conveying the properties to the owner of the first mortgage put it out of their power to comply with their agreement, they were not entitled to recover.

The judgment is affirmed.

---

## Sunderland's Estate (No. 1).

*Will—Legacy—Absolute interest.*

Testator after referring in his will to a mortgage, of $50,000 directed as follows: "I bequeath to my daughter M. $7,500 from the aforesaid mortgage of $50,000, this is absolutely to her after my decease should she have not issue this is to be returned to my estate, also $5,000 in other securities or cash." *Held*, that the daughter took an absolute interest in the legacies.

*Will—Life estate—Issue.*

Testator by his will directed as follows: " It is my desire that the mill property be sold before or not later than five years after my decease and the proceeds with any balance of my estate to be divided into seven parts, one part to each child except M.'s part, should she not have issue her part is to be divided to the other six parts should she have issue her part goes to the issue." *Held*, that the daughter took a life estate only in one seventh of the residue.

Argued Jan. 23, 1902.    Appeal, No. 292, Jan. T., 1901, by Thomas T. Sunderland et al., from decree of O. C. Phila. Co., April T., 1900, No. 606, sustaining exceptions to adjudication in Estate of John Sunderland, Deceased, et al.    Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Exceptions to adjudication.

PENROSE, J., filed the following opinion:

The testator divides his estate among his seven children, as

follows: $15,000 to Emma; certain real estate and $1,500 to William; his residence and furniture, with $12,500, each, to Mary and Lavinia; certain real estate and $5,000 to John; $12,500 to Martha; and $15,000 to Thomas; the residue being given as hereinafter stated.

By a codicil he directs that the house so given to Mary and Lavinia shall be " maintained for one year, if not sold before, as it must be sold as soon as a purchaser can be secured within two years." There is no direction that the proceeds of sale shall not be received by the original devisees; and as a clear gift in the will is not to be cut down by subsequent words or a codicil except to the extent expressed or clearly implied (Whelen's Estate, 175 Pa. 23), and as parties to whom proceeds of sale are given may elect to take the land itself (Burr v. Sim, 1 Whart. 252), it is not easy to see how the positive provision that the property shall be maintained at the expense of the general estate, for one year, can be affected because the devisees or legatees have so elected. The first exception is, therefore, overruled.

The legacies are expressed as being so much from a mortgage for $50,000, and so much in cash or other securities. Objection was made to the allowance of any commissions on this mortgage, which, it would seem, has not yet been collected. Its collection, however, as the auditing judge has said, must, necessarily, precede any distribution, and commissions are to be allowed precisely as if the amount were already held in cash. The second exception is also overruled.

But it is further objected that upon an estate so large as this ($114,035.38), composed of the mortgage referred to and a few items collected in cash, an allowance of commissions at five per cent is excessive, the estate being free from debt or complication, and, as the account shows, there being but eleven items of credit, including cost of filing account, commissions, and counsel fees. This objection appears to be well founded: Pusey v. Clemson, 9 S. & R. 204; Walker's Estate, 9 S. & R. 225; Whelen's Appeal, 20 P. F. Smith, 410; Lang's Estate, 15 Phila. 593. Allowing under Stevenson's Estate, 4 Whart. 98, two and one half per cent for responsibility, an additional one per cent will amply compensate the services rendered by the accountants as executors. It is true that questions arise

under the will with regard to the share of Martha Walker, one of the daughters; but with this, except in their capacity as legatees, the accountants have no concern. They are mere stakeholders, having no additional labors imposed upon them as executors by reason of questions of distribution. The third exception is sustained, the commissions reduced, on principal, to three and one half per cent (five per cent being allowed on income), and the difference being added to the balance for distribution.

What has thus been said with reference to the third exception applies also to the fourth. Counsel representing the accountants as executors, represented them and all of the children except Martha as legatees. Their services in the former capacity were comparatively insignificant. The account contains a credit for $150 for counsel fees, and an additional allowance of $150 will not err on the side of illiberality, especially as much of what was done was made necessary by the manner in which the account was stated, restated and re-restated. The allowance in the adjudication is reduced to $150, and the difference, $350, added to the balance of principal. For the sum thus disallowed as against the estate, the parties represented must be looked to in their individual capacity.

The bequests to the daughters are thus expressed : " To my daughter Emma . . . . of said mortgage $10,000, also $5,000 of other securities or cash absolutely. . . . To my daughters Mary and Lavinia . . . . $7,500 to each of the said mortgage . . . . also $5,000 in other securities for each or both absolutely . . . . To my daughter Martha Walker $7,500 from the aforesaid mortgage . . . . This is absolutely to her after my decease. Should she not have issue this is to be returned to my estate. Also $5,000 in other securities or cash."

The gifts to the three sons have already been sufficiently stated.

The disposition of the residuary estate is as follows : " It is my desire that the mill property be sold before or not less than five years after my decease, and the proceeds with any balance of my estate to be divided into seven parts, one to each child except Martha Walker's part. Should she not have issue her part is to be divided to the other six parts. Should she have issue her part goes to that issue."

The auditing judge, following the well settled principle, of which Mickley's Appeal, Karker's Appeal, Biddle's Appeal, etc., are illustrations, held that the legacy to Martha being given, in express terms, "absolutely," the limitation to issue, etc., must be understood as referring only to her death in the lifetime of the testator, and the ruling in this respect has not been excepted to. But he also held that Martha took no part of the residuary estate, one seventh of which he directed should be held, principal and income, for her issue, should she leave any, or to the other children of the testator, if she should not. It is claimed on behalf of the latter, though they have filed no exceptions, that the share should now go to them, as Mrs. Walker has not, and never has had, issue; while, on the other hand, it is contended that the gift of her residuary share is governed by precisely the same principle which was applied to the legacy, and that it also should be awarded to her absolutely.

It is clear that the award to the executors to hold as above cannot be sustained, involving, as it necessarily does, a trust not created by the will, and an accumulation indefinite in duration and not for the benefit of an existing minority, forbidden by statute. If Mrs. Walker is not entitled to any estate, the share must go to the other children of the testator. But it is a fundamental rule in the interpretation of wills that an heir will not be disinherited except by express words or necessary implication, and that all doubts will be resolved in his favor and against his exclusion. That this testator did not intend that his daughter should have no part of his residuary estate is manifest. He speaks of one seventh as "Martha's part," and this recognition of her interest is repeated when, in providing for the contingency of her having no issue, it is declared that "her part" is to be divided to the other six parts; and again, "should she have issue" "her part" "goes to that issue."

The will was executed November 27, 1897; the testator died January 22, 1898,—less than two months after. It is plain that an immediate limitation of Martha's share, to her issue or to his other children, was not contemplated. He knew that she was childless, and the birth of issue is referred to as a future event—"should she not have issue;" "should she have issue;" and of course a construction which suspends ownership and

leads to an illegal accumulation will not be adopted if any other is possible. He appears to have been his own scrivener, evidently unskilled in the use of language. He has expressed himself eliptically, but his intention is clear. To all of his children except Martha he gives absolute interests ; to her, for life only, with limitation to her issue, " should she have issue " (at the time of her death), to her brothers and sisters, if she should not. In this way a meaning is given to every word in the residuary clause.

There is an obvious difference in the language of the bequest to Martha of the $7,500, which, in terms, is declared to be given absolutely ; while in the residuary clause, the limitations to issue, etc., are an integral and original part of the gift.

The seventh and ninth exceptions are sustained, one seventh of the balance of the principal being awarded to Mrs. Walker upon the entry of security for the protection of the interests taking effect at her death, and one seventh of the balance of income to her absolutely.

We do not think that the doctrine of Kennedy's Estate, 26 Crumr. 479, can be applied to this estate. There, there were thirty-two beneficiaries, only one of whom was represented before the auditing judge, and as all had the benefit of the services of counsel thus employed, it was thought proper that his compensation should come out of the common fund. The case was exceptional, and so declared both in the Supreme Court and in the court below. Here all parties were represented by counsel, and the reduction of credits, secured by counsel for Mrs. Walker, was not desired by the other parties. The decision of Com. v. Order of Solon, 193 Pa. 240, rules the question.

The first, second, fifth and eighth exceptions are overruled, the others are sustained, and the adjudication modified in accordance with this opinion.

*Errors assigned* were (1) in construing the will so as to give to Martha Walker an absolute interest in the two legacies, aggregating $12,500 ; (2) in construing the will so as to give Martha Walker a life estate in one seventh of the residue.

*Robert J. Wright*, with him *James Gay Gordon*, for appellant.

*John Weaver*, for appellee.

PER CURIAM, May 26, 1902:
The decree is affirmed on the opinion of Judge PENROSE.

---

# Sunderland's Estate (No. 2).

*Will—Maintenance of house—Devise.*

Where testator devises by his will a house to two children, and directs by a codicil that it " is to be maintained for one year if not sold before as it must be sold as soon as a purchaser can be secured within two years," the amount necessary for the maintenance of the house for one year must be paid by the executors out of the general estate.

*Executors and administrators—Commissions—Mortgage.*

Where an estate consists of $114,000, composed of a mortgage and a few cash items, and it appears that there are but eleven items of credit, including costs of filing account, commissions and counsel fees, an allowance of three and one half per cent commission on principal is proper, and this rate should be allowed on the mortgage, although the mortgage has not as yet been collected.

*Decedent's estates—Counsel fee.*

Where all the beneficiaries under a will are represented by counsel, and counsel for one of the parties is employed to secure a construction of the will in favor of his client, he is not entitled to a fee out of the estate merely because he secured a reduction of credits not desired by the other parties.

*Will—Life estate—Issue.*

Testator by his will directed as follows: " It is my desire that the mill property be sold before or not later than five years after my decease, and the proceeds with any balance of my estate to be divided into seven parts, one part to each child except M.'s part; should she not have issue her part is to be divided to the other six parts; should she have issue her part goes to the issue." *Held*, that the daughter took a life estate only in one seventh of the residue.

Argued Jan. 23, 1902.    Appeal, No. 350, Jan. T., 1901, by Martha S. Walker, from decree of O. C. Phila. Co., April T., 1900, No. 606, sustaining exceptions to adjudication in Estate of John Sunderland, Deceased, et al.    Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.