## DeVilder's Appeal

*John M. Myers*, for county treasurer.

*A. A. Geary*, county solicitor, for County of Clarion.

RIMER, P. J., October 29, 1941.—L. J. DeVilder, Treasurer of Clarion County, has appealed from the action of the board of county commissioners of said county, approved by the board of county auditors, fixing the compensation of said county treasurer for his services on behalf of the county for the year 1941. The said resolution is as follows:

"Resolved, That the County Treasurer of Clarion County for the year 1941 be paid one and one-half percent (1½%) commission on the first one hundred ten thousand dollars ($110,000) received during the year 1941, and one and one-half percent (1½%) commission on the first one hundred ten thousand dollars ($110,000) disbursed during the year 1941, and one tenth of one percent (.1%) commission on all money received in addition to the first one hundred ten thousand dollars ($110,000), and one tenth of one percent (.1%) on all money disbursed in excess and in addition to the first one hundred ten thousand dollars ($110,000), excepting that no commissions shall be paid the County Treasurer on repayment of borrowed money nor on monies that may be transferred from one account to another account and further that no commissions shall be allowed on monies received from a predecessor at the close of a fiscal year, nor on monies turned over to a successor in office and that the County Treasurer, L. J. DeVilder, shall be paid in addition to the above stated commissions an expense allowance of nine hundred dollars ($900) for handling the funds of the Clarion County Institution District for the year 1941."

We have no annual salary fixed by law for the County Treasurer of Clarion County. The foregoing action by the board of county commissioners with the approbation of the county auditors is authorized by section 150, art. III, of The General County Law of May 2, 1929, P. L. 1278, 16 PS §150, as follows:

"In counties where no annual salary is fixed by law for the county treasurer, he shall receive, in full compensation for his services on behalf of the county, a certain amount per centum on all moneys received and paid by him, which rate shall be settled from time to time by the county commissioners with the approbation of the county auditors."

The appeal in this case is authorized by section 1 of the Act of April 16, 1875, P. L. 54, as amended by

section 1 of the Act of May 10, 1921, P. L. 437, 16 PS §3074. The act as amended reads as follows:

"In every case where the county commissioners and the county auditors have heretofore fixed or shall hereafter fix the compensation of the county treasurer, or where they have heretofore failed or shall hereafter fail to fix the compensation of any county treasurer, *an appeal may be taken to the court of common pleas of the proper county by the commissioners or treasurer, in the same manner that appeals may now be taken from the reports of county auditors on settlement of the accounts of county treasurers in this Commonwealth:* Provided, That no appeal shall be taken in any case where the commissioners and auditors shall have fixed or shall have failed to fix such compensation prior to the approval of this act, unless the same shall be taken within thirty days after such approval; *and on every such appeal the said court shall have power, in its discretion, to fix the compensation aforesaid finally.*" (Italics supplied.)

In the consideration of the proceedings upon this appeal, we must first determine the extent of the jurisdiction of this court and whether the court must take up the whole matter de novo and determine what is fair and adequate compensation to the county treasurer for the services rendered to the county, or whether we are limited to the question of whether the discretion vested in the commissioners and auditors has been abused, even though the court, in the exercise of independent judgment, might be inclined to differ with them as to their conclusion.

This latter position is ably sustained by the opinion of the learned President Judge of Jefferson County, Honorable Charles Corbet, in Holben's Appeal, 4 D. & C. 789 (1923). The facts in that case were very similar to those in the present case. There the board of county commissioners and the board of county auditors had unanimously fixed the treasurer's compensation.

The appeal was upon the ground that the compensation was inadequate properly to remunerate the treasurer for the responsibilities of his office, services rendered by him, and the cost and expenses of the maintenance of his office.

Judge Corbet calls attention to the Act of 1875, supra, which gave the right of appeal only in cases where the county boards failed to fix the compensation of their county treasurers. He then cites at length the Act of 1921, supra, amending the original act, to incldue those cases where the two boards should fix the compensation of the county treasurer, noting that the amended act carried the final provision of the Act of 1875, which reads as follows (p. 790):

" '. . . and on every such appeal the said court shall have power, in its discretion, to fix the compensation aforesaid finally.' "

Judge Corbet construed the foregoing provisions to mean that where the board of commissioners and the board of auditors had failed to fix the compensation of the treasurer, the court, by the appeal, is substituted for such boards and must fix the compensation finally. But where the officers, thus charged with the duty to fix or settle the compensation, have done so, and an appeal is taken by the county treasurer, the only duty of the court, in such latter case, is to determine whether the discretion vested in the commissioners and auditors has been abused. The court further held that the burden is upon the appellant to show such abuse and only if and when such abuse of discretion is shown is the court vested with power, in its discretion, to fix the compensation finally. In the cited case, Judge Corbet found that the appellant had not established any such abuse of discretion and that the court should not substitute its judgment for theirs, and dismissed the appeal.

No other case has been cited by counsel in aid of the construction of this act. Generally speaking, we would

hesitate to adopt a position directly opposed to that taken by the learned jurist in the cited case. It would greatly lighten the burden of the court in this case to hold that our powers are limited to determining whether or not there was an abuse of discretion by the boards who fixed the treasurer's compensation. Even if the judgment of the court should differ from that of the boards fixing the compensation, there is not the slightest evidence of any abuse of discretion. In fact, there is nothing before the court to indicate the matters considered by these boards, except only that the treasurer appeared before the board and asked for an increase of compensation over the year 1940, upon the ground that the compensation was inadequate for the services required to be rendered, particularly in the matter of clerical hire.

The jurisdiction of this court is not derived from section 10 of article V of the Constitution, giving the power to issue writs of certiorari to justices of the peace and other inferior courts not of record and to cause their proceedings to be brought before them and right and justice to be done. The jurisdiction here is determined by existing statutes. The statute here construed gives to the appellant "an appeal". Except in respect to courts which are generally appellate in their character, an appeal carries with it the elements of a new trial. The appeal here granted is not limited by the statute as is the appeal from the award of the Workmen's Compensation Board under the amending Act of June 4, 1937, P. L. 1552, 77 PS §872. There the appeal is limited to "matters of law". Here the proviso that the court "shall have power, in its discretion, to fix the compensation aforesaid finally" supports, rather than limits, the jurisdiction of the court as full and complete to hear and determine this case upon the evidence.

We adopt without question the statement in the opinion in Holben's Appeal, supra, p. 791, that "Where, through inability of the county commissioners and

county auditors to agree, or for any other reason, there exists a failure to fix the compensation, it is quite apparent the court is, by appeal to it, substituted for the commissioners and auditors, who have failed to function, and must fix the compensation finally."

Such construction of the Act of 1875, supra, was necessary to save it from being an absurdity. It related only to cases where the boards failed to fix the compensation, and failure of the court to take jurisdiction, de novo, and determine upon the evidence what shall be received by the treasurer "in full compensation for his services on behalf of the county" would amount to a denial of justice, denying the treasurer the right to receive anything for his services. Therefore, when the amending Act of May 10, 1921, P. L. 437, added to the instances where the appeal would lie because of failure to fix compensation the words, "That in every case where the county commissioners and the county auditors have heretofore fixed or shall hereafter fix the compensation of the county treasurer . . . an appeal may be taken to the court of common pleas," etc, the rights under such an appeal and the jurisdiction of the court to which the appeal is taken remain the same in both instances. Therefore, it is the duty of the court to hear the appeal, de novo, and enter a judgment upon the evidence before it.

For the year 1940 the county treasurer received, under the joint action of the boards fixing his compensation, $1,899.18 from the general fund, $900 (and no commission) for his services in respect to the county institution district taxes where the receipts were $45,-535.19, and $112.34 for his commission on land returns of this tax, and from the road bond account he received $1,419.91, and from the special road account $1.02, a total of $4,332.45.

By virtue of his office he received for his services in handling monies of the State and performing the duties in the issuing of licenses, etc., the following amounts:

| | |
|---|---|
| Hunting licenses | $293.55 |
| Fishing licenses | 99.40 |
| Dog licenses | 397.50 |
| Mercantile licenses | 177.79 |
| Total | $968.24 |

For his commission as collector of taxes in five districts of the county he received a total of $824.65.

With the amounts received from the State and from his services as tax collector we have no direct concern in fixing his commission. These amounts must be considered rather in connection with that portion of his services and clerical expenditures required thereby. In fixing his compensation for the year 1941, we do not consider any amount to be received by him as fees or compensation for tax sales since there will be no tax sales in that year.

The treasurer gives his estimate of the amounts which will come into his hands as county treasurer and upon which his compensation will be based upon commission as $149,116, which includes the liquid fuel fund coming to the county. However, in a general statement he estimates that this fund may reach $160,-000 to $170,000. This latter amount very considerably exceeds the amount coming into his hands in such funds for the year 1940, as appears by the auditor's report for that year. Therefore, we have taken as a basis for fixing his commissions the amount of $165,000 and the amount to be paid out by him at $140,000.

He testifies that a fair compensation would be 1½ percent on the first $125,000 received and the same amount on the first $125,000 paid out. Upon the amounts received and paid out, in either event above $125,000, he gave as his opinion that one half of one percent in each case would be fair compensation. Computed upon this statement and adding the $900 which is paid him in lieu of any commission upon the county

institution district tax, we find that his compensation as county treasurer would be $4,925.

In respect to expenditures for clerk aid in this office we find that two clerks are necessary and that fair wages for the chief clerk would be $150 per month and for the second clerk $90 per month, an aggregate for the year of $2,880. Without any reference to the amounts which we have described as incidental to his office, this would leave the treasurer approximately $2,100 for his own salary. If we deduct what he has stated he proposes to pay for clerk hire in this year, it would leave him $2,225. Apportioning the expenditure for clerk hire which might fairly be charged to that portion of the receipts which does not come to him as county treasurer but only as incidental to his office in the sum of $900, he would have left approximately $3,000 for his own salary under the increased allowance.

This is not excessive compensation for the responsibilities and duties devolving upon the county treasurer. This responsibility extends to the safe keeping and lawful payments of expenditures, not only of $165,000 which may be termed the general fund but also approximately $45,000 of the county institution district tax, commonly called the poor district, an aggregate of about $210,000.

In 16 Vale's Pennsylvania Digest, under the subject of executors and administrators, we find this statement with citations following (sec. 496(2), p. 1033):

"The rule of compensation contemplates an invariable charge of two and one-half per cent. for responsibility, without regard to the magnitude of the estate and such a percentage in addition as under the circumstances of a given case shall be a fair equivalent for the labor and skill employed."

The first case cited under this statement is that of Stevenson's Estate, 4 Wharton 98. This estate inventoried something over $350,000. The report of the au-

ditors appointed by the court allowed the executors five percent on this amount, which the orphans' court reduced to three percent. The Supreme Court, per curiam, affirming the orphans' court decree, made this statement:

"The responsibility which is incurred by the receipt and disbursement of money, is a legitimate subject of compensation, and an unvarying rate per cent., without regard to the magnitude of the sum, will always be a just measure of it, because the responsibility increases in proportion to the amount. It is consequently susceptible of a uniform measure, which we think may be reasonably put at two and a half per cent."

The foregoing case is followed in Sunderland's Estate, 203 Pa. 155. There the estate amounted to $114,035.38 and was free from debt or complications. The account filed showed but 11 items of credit. In reducing the allowance to the executors, originally five percent, the orphans' court allowed two and one-half percent for responsibility and an additional one percent for services, and the Supreme Court affirmed this allowance upon the opinion of Judge Penrose of the court below. Since it is apparent that the responsibility of the county treasurer during the year 1941 will extend to something like $210,000, if we were to apply the rule which has been so long followed in fixing compensation for executors and administrators, using the same percentage for responsibility alone, an executor or administrator would be allowed for such responsibility about $5,250. While we have not arrived at the compensation of the treasurer in this case by the foregoing rule in respect to the compensation of executors or administrators, such rule and the citations supporting it may well be considered as relating to analogous cases.

In the matter of services rendered and to be rendered by the county treasurer we find them to be much more onerous than those imposed upon executors and administrators in the instant case last cited. He is

charged with correctly entering a very large number of items, constituting the receipts paid in to him and the amounts paid out. Of greater importance, the records of his office must show countless items, correctly entered and preserved, which affect the title to real estate. In this respect the burden imposed upon the county treasurer was greatly increased by the acts of assembly which permitted delinquent taxpayers to pay off such taxes in five equal annual payments. By these acts not only was the mere matter of bookkeeping rendered much more complicated but the receipt of such taxes in five items instead of one item greatly increases the work as well as the responsibility of the county treasurer.

The treasurer testified that to do the work of the office a very great amount of overtime was required of him and his clerks, running as high as 14 working days of seven hours each per month.

It is evident that the recent legislative requirement that taxes on real property and personal property may not be entered as one item but must be separated imposes very considerable additional responsibility and additional labor as well. Therefore, we find a fair compensation to be as set forth in the order and decree which follows. In so doing we repeat that there is not the slightest indication of any abuse of discretion in the action of the boards fixing the compensation in this case. It is evident that a difference in opinion might well be attributed to the different presentation of facts and the presentation of additional facts in this hearing before the court, as compared with those submitted to the boards upon the original hearing.

For the reasons above given, the appeal of the county treasurer in this case will be sustained and the following order and decree entered.

### Judgment

And now, October 29, 1941, it is ordered, adjudged, and decreed that the County Treasurer of Clarion

County, for the year 1941, be paid one and one-half percent commission on the first $125,000 received during the year 1941, and one and one-half percent commission on the first $125,000 disbursed during the year 1941, and one half of one percent commission on all money received in addition to the first $125,000, and one half of one percent commission on all money disbursed in excess of and in addition to the first $125,000, excepting that no commissions shall be paid the county treasurer on repayment of borrowed money nor on moneys that may be transferred from one account to another account and further that no commissions shall be allowed on moneys received from a predecessor at the close of a fiscal year, nor on moneys turned over to a successor in office and that the county treasurer, L. J. DeVilder, shall be paid in addition to the above-stated commissions an expense allowance of $900 for handling the funds of the Clarion County Institution District for the year 1941, in lieu of any commission upon said last-mentioned fund.